## Santiago Arismendis v. The State.

### No. 2176. Decided December 18, 1899.

**1. Theft of Cattle—Charge as to Penalty.**

On a trial for theft of cattle, where the court instructed the jury if they found defendant guilty he should be confined "for a term of years" not less than two nor more than four years; Held, there is nothing in the contention that it was error for the court to use the expression, "for a term of years."

**2. Same—Charge as to Conspiracy.**

Where the indictment simply charged a theft of the cattle, it was error for the court to charge upon a conspiracy to commit said theft, and especially so where there was no evidence to authorize such a charge.

**3. Same—Charge Upon the Weight of Evidence.**

On a trial for theft of cattle, where the defendant introduced in evidence a bill of sale, a charge of the court to the effect that if the jury believed that said bill was not made by the purported maker, but by defendant himself as a sham and device to cover up and avoid the crime, that then they must consider same together with all the other facts and circumstances in arriving at a verdict, etc., was clearly a charge upon the weight of evidence.

**4. Same—Circumstantial Evidence.**

On a trial for theft of cattle, where the case is made up of circumstantial evidence, and there is no direct proof of the fraudulent taking, it is reversible error to fail to charge the law as to circumstantial evidence.

Appeal from the District Court of Cameron. Tried below before Hon. R. W. Stayton, Special Judge.

Appeal from a conviction of theft of two head of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*John Bartlett,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of the theft of two head of cattle, the property of P. Bouchard.

The following are substantially the facts adduced on the trial: P. Bouchard, the owner of the two head of oxen, testified that June 19, 1898, he was informed by the manager of his ranch, which is situated sixteen or eighteen miles from the city of Brownsville, that two head of his oxen were missing. He notified the sheriff of Cameron County. On June 23d witness saw the oxen at the slaughter-pen in Brownsville. The oxen had witness' brand, and another brand, which witness does not know to whom it belongs, nor can he paint it. The oxen were taken without his consent being given, either to defendant or anyone else. He identified the oxen as his property. Witness did not know who stole the oxen, or by whom they were taken from his ranch. Isabel Cantu stated: That he lived in Brownsville, and his vocation was buying cattle for butchers. That he bought a couple of head of oxen from defendant, the bill of sale being written in Spanish. The translation of the bill of sale shows it to be an ordinary bill of sale, giving a certain Spanish brand as the brand on the two head of oxen. Witness knows the Spanish brand contained in the bill of sale to be the brand of defendant's father, and thinks this is the brand on the oxen, but is not sure. That he paid defendant $70, Mexican money, for the cattle. Witness first saw the oxen at the Palma ranch of defendant. The pasture is about 200 yards from the public road, and in the open prairie. The cattle could be seen from the road. Defendant sent the oxen to Brownsville by his brother-in-law, Guadalupe Cortez, and witness paid defendant, and defendant gave witness a bill of sale. C. F. Tilghman testified: He was acting sheriff of Cameron County, and was notified that oxen belonging to prosecutor had been stolen. "I notified prosecutor that the two oxen were found in the slaughter-pen in Brownsville, and he came and identified them as his cattle." After this, witness met defendant near Lucio Bonis' place, in an alley, and asked him if he had sold these oxen to Cantu, and he said he had. Defendant told witness the oxen he sold Cantu were his father's, and witness took defendant before a justice of the peace, and made complaint against him. At the time the oxen were found they had two brands on them. Both oxen were branded with the same brands. One was prosecutor's brand, and the other the brand of defendant's wife, which last brand was only burned into the hair, and did not burn the skin. The last named brand is not the brand in the bill of sale. The brand in the bill of sale is the brand of defendant's father, and the brand on the oxen is the brand of defendant's wife. H. Putegnat testified substantially as did the former witness. Defendant testified: That while on his way from a ball at the —— ranch with Lucio Esparza, and when near the Olmito Bridge, on the public road, "we met a man with the oxen, and I asked him if he wanted to sell them; and I made a trade with him, and bought the oxen, and paid him $60, Mexican money. I paid him in Brownsville. I bought them for my

father." Defendant introduced the bill of sale, which, translated, reads as follows: "I certify having sold to Mr. Benito Garza, two oxen (B) of the brand which I make on the margin; and for further I sign this in the ranch of the Plamital, the 17th of June, 1898. Francisco Ibara." And upon the back of said bill of sale was the following indorsement, to wit: "I transpose by sale to Mr. Santiago Arismendis what on the back corresponds, and for security I sign it in the Olmito on the 19th day of June, 1898. Benito Garza. For witness, Julio Reyes. For witness, Lucio Esparza." Defendant further stated: That Benito Garza had written, signed, and given him the above bill of sale. After he bought the oxen, he sent them to the ranch of his brother-in-law, Guadalupe Cortez. The cattle had the B brand on them when defendant bought them, and he sold the oxen to Isabel Cantu. While defendant had the oxen he kept them in his pasture, running loose with his other cattle. The pasture is an open prairie, and near the public road, and could be seen by any one. The brand in the bill of sale is the brand of defendant's father. Defendant also stated: That he did not know Benito Garza before buying, nor does he know where he lives. That Lucio Esparza witnessed Garza's signature at his (Esparza's) house, and Julio Reyes witnessed the signature at defendant's request in Brownsville, at defendant's father's house, and Garza was present at the time. Witness sold the cattle as the cattle of his father, and bought them for him. Defendant stated he was not sure whether the brand on the oxen was his or his father's brand. Sometimes he used one, and sometimes the other. Lucio Esparza was present when witness bought the oxen, and standing near by. That he sold the cattle to Cantu for $70, Mexican money, at the Palma ranch. Guadalupe Cortez delivered the cattle to Cantu in Brownsville the next day. Julio Reyes testified: That he signed the bill of sale at the request of defendant. Did not know Benito Garza, the maker. Saw a stranger with defendant when he signed the bill of sale. That he met defendant in the street, and defendant asked him to sign the bill of sale. Went into a grocery store and signed it. Did not sign the bill of sale at his father's house. Did not see any money paid by defendant to any one. Did not see Benito Garza sign the bill of sale. Lucio Esparza, the other witness to the bill of sale, testified: That he knew defendant. About June 19th was coming home from a ball with defendant, and when near Olmito Bridge, on the public road, saw a man with two oxen. Defendant stopped to speak with him. Did not see him make a trade for the cattle, but went on to his home, about a quarter of a mile away. He acknowledged signing the bill of sale as a witness at the request of defendant. "Don't know Benito Garza. Never saw him before or since. Did not see him sign the bill of sale." Witness signed same at his house, and Garza was not present. Did not see Guadalupe Cortez drive the cattle away, and did not see him at all.

The first ground of appellant's motion for new trial is: "The court erred in defining the punishment for this offense, instructing the jury

that defendant, if guilty, should be confined to a term of years not less than two nor more than four years. The ground of objection is that under the statute the offense is not punished 'by a term of years,' but is for any period of time not less than two nor more than four years." Penal Code, art. 882. There is nothing in this contention.

His second ground is: "Because the court authorized the jury to consider whether defendant and Benito Garza acted together or conspired with one another in the original taking of said two head of neat cattle, or either of them, as one of the circumstances to be considered in arriving at a verdict herein, without at all instructing the jury that, to be considered, it must have been a fraudulent taking; and because there is nothing in the indictment of a conspiracy to commit theft, nor was there on the trial herein a scintilla of evidence to warrant such charge of the court on conspiracy; and because the same practically permitted the State to indict for an offense, and authorized the jury to weigh and consider the elements of a different offense from that charged." We do not think the evidence, as contended by appellant, authorized the court to charge on the law of conspiracy.

His third ground complains of the following portion of the court's charge: "If you believe that said bill of sale was not made by said Benito Garza, but, on the contrary, believe that it was made by defendant as a sham and device conceived by him to cover up and avoid the crime, with the commission of which he stands charged, then and in that event you are charged that you must consider same, together with all the other facts and circumstances, if any, in evidence, in arriving at your verdict; and you are further instructed," etc. As contended by appellant, this is clearly a charge upon the weight of the evidence, and is such a charge as was calculated to injure the rights of appellant. We have uniformly held that the judge is not authorized to give a charge upon the weight of evidence, but must give one upon the law applicable to the facts of the case, without intimating to the jury in any respect the opinion of the court as to the weight and character of the evidence. Searcy v. State, 1 Texas Crim. App., 440; Stuckey v. State, 7 Texas Crim. App., 174; Stephens v. State, 10 Texas Crim. App., 120.

In his seventh ground, appellant insists that the court erred in failing to charge on the law of circumstantial evidence. An inspection of the evidence above stated discloses that this contention is clearly correct. The case is made up of circumstantial evidence, and there is no direct proof of the fraudulent taking, which is the gist of the offense of theft.

In the view we take of the record, it is unnecessary to discuss the other assignments of errors. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Presiding Judge, absent.